straint was principally or wholly for the purpose of inflicting personal chastisement upon the master; that it was to beat, or to wound him, and not to deprive him of his command or authority on board the ship; or that the confinement was a means of personal punishment, and not an end. The law looks to the act, and not merely to the intent. If the seizure is unlawful, it is a confinement. The law esteems the person of the master sacred, and protects him from all restraint, which is unlawful.

There is another point, which has been suggested by the argument at the bar. How far has the master a right to displace the mate? We are of opinion, that he has this authority absolutely; and the mate is in such a case bound to submit. The master is the lawful agent of the owner for this purpose, and the authority is entrusted to him from motives of great public policy, to secure due subordination on board, and to promote the vital interests of navigation and trade. If the master abuses his authority, or exercises it in a wanton or malicious manner, he is responsible for his conduct. But his authority is conclusive upon all inferior officers. If he displaces the mate, the latter is bound to abstain from all future exercise of his ordinary authority on board of the ship. He is bound to deliver up the log-book, and resign the state-room set apart for the officers. He is not indeed to be treated in a harsh or disgraceful manner. He is to have suitable food and lodging, and conveniences assigned to him by the master. But like every other person on board, he is bound to submit to all reasonable commands, and to conduct himself in a quiet and inoffensive manner. Being no longer in office, he is to be deemed a quasi passenger; and his remedy for any grievance lies by an appeal to the laws of his country for redress, and not by any attempts to avenge his wrongs, or to inflict personal chastisement on the master.

Verdict for the defendant.

---

## Case No. 16,226.
UNITED STATES v. SAVALOFF.
[See Case No. 16,252.]

---

## Case No. 16,226a.
UNITED STATES v. The SAVANNAH.
[Nowhere reported; opinion not now accessible.]

---

## Case No. 16,227.
UNITED STATES v. SAWYER.
[1 Gall. 86.] [1]

Circuit Court, D. Massachusetts. May Term, 1812.

NONINTERCOURSE LAWS—ACTION ON BOND—OYER OF BOND—PLEA OF PERFORMANCE—PRACTICE—CIRCUIT COURTS—ERROR TO DISTRICT COURTS—REVERSAL.

1. Under the 13th section of the act of March 1, 1809, c. 91 [2 Story's Laws, 1118; 2 Stat.

[1] [Reported by John Gallison, Esq.]

531, c. 24], a bond is well taken which includes in its condition a stipulation to produce at the collector's office within six months the certificate, &c., required by that section. Quære, whether a bond voluntarily given under such section, with a condition different from that required by law, would be wholly void. Oyer of a bond does not include oyer of its condition; nor e converso. If oyer is wanted, it must be prayed of each.
[Cited in Bank of U. S. v. Brent, Case No. 910; U. S. v. Brown, Id. 14,663.]

2. If the defendant, on oyer, does not set out the whole of the bond, the plaintiff may relieve himself by praying it to be enrolled.

3. The court will go back to the first error in the pleadings, and give judgment accordingly.

4. If a plea of performance be too narrow, or contain a flat negative pregnant, it is bad.
[Cited in Jackson v. Rundlet, Case No. 7,145.]

5. A plea seeking to avoid a bond for being illegally taken, colore officii, should specially state all the facts which show that illegality.
[Cited in Jackson v. Simonton, Case No. 7,147.]
[Cited in Atchison & N. R. Co. v. Miller, 16 Neb. 665, 21 N. W. 451.]

6. On a reversal of judgment in an action brought by writ of error from the district court of Maine, the circuit court may, if justice require, award a venire facias de novo triable at the bar of the circuit court.
[Cited in U. S. v. Webber, Case No. 16,656.]
[Cited in Hillsborough v. Deering, 4 N. H. 96, 97.]

[Error to the district court of the United States for the district of Maine.]

The original action was debt by the United States, against the defendant in error [Abner Sawyer, Jr.], on a bond dated on the 17th March, 1809, for $3,746. The defendant craved oyer of the condition of the bond; and upon oyer granted, the condition appeared to be in the following words: "Whereas, the following goods, wares, and merchandize, that is to say, 130 thousand feet of boards, 9 thousand red oak hogshead staves, 100 thousand shingles, 150 red oak hogshead shooks, 15 quintals of fish in 20 boxes, as per manifest, now delivered to the collector of the customs for the district of Saco, are intended to be exported in the said vessel, called the Romeo, burthen 179 tons, to the island of St. Bartholomews. Now the condition of this obligation is such, that if the said vessel shall not leave the port without a clearance, nor shall, when leaving the port, proceed to any port or place in Great Britain or France, or in the colonies or dependencies of either, or in the actual possession of either, nor be directly or indirectly engaged during the voyage in any trade with such port, nor shall put any article on board of any other vessel; and if the certificate and other proofs, required by law, of the landing of the whole cargo of the said vessel at the aforesaid island of St. Bartholomews, or at any other island or place other than Great Britain or France, or the colonies or dependencies of either, or in the actual possession of either, shall be produced at this office within six months from the date hereof, then